# CHARLESTON.

W. B. MARTIN v. CONSOLIDATED COAL & OIL CORPORATION

(No. 5593)

Submitted May 19, 1926.    Decided June 1, 1926.

1. MINES AND MINERALS—*As General Rule, Oil and Gas Leases Will be Liberally Construed in Favor of Lessor and Strictly As Against Lessee.*

   The general rule as to oil and gas leases is that such contracts will generally be liberally construed in favor of the lessor, and strictly as against the lessee.    (p. 726.)

   (Mines and Minerals, 40 C. J. § 667.)

2. SAME—

   In case of failure to begin operations or pay delay money as provided in an oil and gas lease, recovery of the delay money is not the only remedy of lessor, where the lease contains a clause giving lessee the right to surrender the lease at any time on making a nominal payment.    (p. 727.)

   (Mines and Minerals, 40 C. J. § 696.)

3. SAME—*Time is of Essence of Every Material Provision of Oil and Gas Lease Conferring Option or Right of Exploration and Requiring Operations to Begin Within Certain Time; Where Lessee Under Oil and Gas Lease Has Not Within Reasonable Time Entered Premises to Explore or Pay Delay Rentals Provided, Law Presumes Abandonment; Where Lessee Under Oil and Gas Lease Has Not Within Reasonable Time Entered to Explore Nor Paid Delay Rentals, Lessor May by Suit in Equity Cancel Lease as Cloud on Title; to Warrant Finding of Abandonment of Oil and Gas Lease Because of Delay in Entering to Explore or Failure to pay Rentals, Each Case Must Depend on its Own Circumstances.*

   Time is the essence of every material provision of such lease, which conferred such option or right of exploration

and required operations to begin within a certain time. Where the lessee has not within a reasonable time entered upon the demised premises for the purpose of exploring for oil and gas, nor paid the delay rentals provided for in the lease, the law presumes an abandonment; and lessor may by suit in equity cancel the lease as a cloud on his title. To warrant the finding of abandonment each case must depend upon its own peculiar circumstances.    (p. 727.)

(Mines and Minerals, 40 C. J. §§ 685, 711, 723.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Cabell County.

Suit by W. B. Martin against the Consolidated Coal & Oil Corporation to cancel an oil and gas lease as a cloud on title. From a decree sustaining a demurrer to the bill, plaintiff appeals.

*Reversed and remanded.*

*Fitzpatrick, Brown & Davis* and *H. S. King,* for appellant.
*Connor Hall,* for appellee.

WOODS, JUDGE:

The sole question for our decision is whether the circuit court properly sustained the defendant's demurrer to the bill.

The bill alleges that the plaintiff, being seized and possessed of a described tract of ninety-two and one-half acres of land, leased the same to a predecessor in title of the defendant, for a period of ten years from December 1, 1921, for oil and gas purposes, and that among the provisions of the said lease was a covenant on the part of the lessee to locate and complete a well on the premises within sixteen months from the date of the lease, or pay to the plaintiff at the rate of one dollar per acre, payable quarterly in advance, for each additional year such location and completion was delayed, payment to be made direct to the plaintiff, or by check mailed to him or deposited in bank; that the lease contained a further covenant that the lessee should complete the first well within sixteen months, and, if it was a commercially paying one, to drill one additional well each twelve months thereafter so long as

commercially paying wells were found; that no well had been drilled on the premises and that the one dollar per acre had not been paid; that the defendant and its predecessor abandoned and forfeited the lease by reason of their failure and refusal to comply with the terms aforesaid; that the plaintiff had made a second lease to one W. H. Kirtley, on October 24, 1923; that other wells were being drilled nearby and the land drained; that the defendant had served notice upon Kirtley that it was the owner of the lease and had prevented him from drilling on it; that the plaintiff has no adequate remedy at law in the premises; and that gas being a concealed substance, there is no way in which damages for the breach of the covenants of said lease can be accurately measured. The bill concluded with a prayer for the cancellation of the lease of December 1, 1921, as a cloud on the plaintiff's title and for general relief.

The point most stressed is that there has been an abandonment on the part of the lessee of the lease. As already noted, the lessor inserted no provision for forfeiture for non-payment of rentals or performance of covenants by the lessee. By the terms of the first lease the lessee was given sixteen months to complete a well. No rental became due until the expiration of that time. The term in which the lessee was required to drill ended April 1, 1923. At that time, by reason of such failure, one quarter's rental became due and payable to the lessor. The next quarter's rental became due on July 1, 1923, and the next, October 1, 1923. The lessor executed the second lease on October 24, 1923. Thus it will be seen that having failed to perform his covenant to drill, the lessee failed to make payment of three specified rentals before the lessor treated the lease as abandoned and leased the premises to another. Intention to abandon is to be derived from all the facts and circumstances of the case. 1 C. J. 7; *Smith* v. *Root,* 66 W. Va. 633; *Mullens Realty Co.* v. *Klein,* 85 W. Va. 712. Abandonment of a lease is the relinquishment by the lessee of his rights under the lease, without intention to resume them. *Mining Co.* v. *Chemical Co.,* 126 Tenn. 18. Disuse and non-occupancy may warrant the inference of an intention to abandon possessory rights in land. *Gluckauf* v. *Reed,* 22 Cal. 468. Failure to begin mining in a reasonable

time evinces intention of lessee to abandon his right. *Chandler* v. *French*, 73 W. Va. 663. Time is not an essential element of abandonment. The moment an intention and the relinquishment of the possession unite, the abandonment is complete. Lapse of time is, however, a circumstance to consider in determining the question of abandonment. *Mitchel* v. *Carder*, 21 W. Va. 277. In *McIntosh* v. *Robb*, 4 Cal. App. 484, six months was held an abandonment; a failure to pay delay rental for a period of eleven months was held to be an abandonment in *Brown* v. *Vandergriff*, 80 Pa. 142; and in *Loveland* v. *Longhenry*, 145 Wis. 60, fourteen months. To say that abandonment is a question of intention, to be gathered from the facts of the case—the acts of omission as well as commission—is but a repetition of the legal maxim that a man is conclusively presumed to intend the natural and probable consequences of his own acts.

A mining lease of the character under consideration may be terminated or forfeited on the ground of abandonment by the lessee. The doctrine of abandonment seems to receive more recognition, and to have been more frequently applied by the courts of this State than by the courts of any other State. There is distinction between failure or neglect of the lessee to develop the leased premises or to operate the mines or wells discovered, and the abandonment by him of the enterprise, although in many cases this distinction is obscure. While not attempting to point out all these distinctions, we may say an important one, however, is that, since abandonment is a question of intention, the acts of the lessee may indicate his intention to abandon the enterprise he has undertaken under the lease, when these acts would not be sufficient to show neglect or a failure to develop or produce sufficient to entitle the lessor to a forfeiture of the lease. Without regard to the forfeiture an abandonment is presumed under the conduct of the lessee. *Lowther Oil Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501; *Starn* v. *Huffman*, 62 W. Va. 422; *Harris* v. *Michael*, 70 W. Va. 356. The title under an oil lease is inchoate and for purpose of exploration only, until oil and gas is found, and if not found no estate vests in the lessee. *Steelsmith* v. *Gartland*, 45 W. Va. 27. The law

recognizes as we have said a distinction between the abandonment of operations under an oil lease, and an intention to abandon or surrender the lease itself; and unless bound by the terms of the lease so to do, it-will not permit the lessee to hold the lease without operating under it, and thereby prevent the lessor from operating on the land or leasing it to others. *Parish Fork Oil Co.* v. *Bridgewater Gas Co.*, 51 W. Va. 583. In construing contracts relating to oil and gas in place, and creating reciprocal rights in respect to it, this Court has always recognized an implied obligation or covenant on the part of the lessee to develop the property with reasonable diligence, so that the lessor may come into possession of the benefits which it was intended he should receive, as otherwise the contract would be one-sided. *Parish Fork Oil Co.* v. *Bridgewater Gas Co., supra; Crawford* v. *Ritchey,* 43 W. Va. 252. This Court has held that though a lease contains no express provision of forfeiture, under some circumstances of delay, or fraudulent evasion of duty of development, equity will cancel an oil lease, as development is regarded as the real intent of the lessor. *Crawford* v. *Ritchey, supra; Bettman* v. *Harness,* 42 W. Va. 433; *Lowther Oil Co.* v. *Miller-Sibley Oil Co., supra.*

Keeping in view the foregoing principles, let us make application of them to the case we have here. No estate had vested in the lessee under the lease sought to be cancelled, as no possession had been taken thereunder. His right was only inchoate. What was the character of the instrument at the time of its execution? Was the lessee bound to do anything? Could the lessor have forced the lessee to perform? For the first sixteen months clearly the lessor was without any remedy whatsoever. At any time during that period the lessee could have said: "We do not care to proceed. Here is one dollar. We hand you a release for record." This action would give the lessee the right to terminate the lease and be released from all obligations under it. Where such release of the lessee extended to those obligations which had actually accrued under the terms of the lease at the time of its surrender, this Court held that it was optional right of entry which is subject to termination at the will of either party. *Eclipse Oil*

*Co. v. South Penn Oil Co.*, 47 W. Va. 84. In that case the Court said: ''The lessee was out nothing, at no expense, and running no risk, and yet he makes the condition of his contract such that the lessor cannot tell for eighteen months whether the contract is to be binding on the lessee or not. In the meantime he received nothing for his delay.'' How pertinent are these words to the present case! It will be observed that the surrender clause in the lease here under consideration does not attempt to absolve the lessee from those obligations which have actually accrued under the terms of the lease at the date of the surrender as in the *Eclipse Oil Company case.* Hence, the principle announced in the latter case is not controlling here, as it is contended for by counsel for the lessor. However, where the contract is optional under terms that obtain in the instant case in respect to one party, it is to be construed strictly in favor of the party that is bound and against the one who is not bound. *Eastern Oil Co. v. Smith,* 80 Okla. 207. Not only that, but it is a recognized doctrine of this Court that oil and gas leases generally are to be construed liberally in favor of the lessor and strictly against the lessee. There is an implied covenant that the lessee will do all that is necessary to carry into effect the purposes and object of the lease. The purpose of the lease here involved, when read by its four corners, is the development of the demised premises. For informative purposes it will be well to note the fact that the parties travelled outside of the regular form of oil and gas leases and inserted a second covenant requiring a well to be completed within sixteen months, then, if such well is commercially paying to drill one additional well each twelve months thereafter until four wells are completed, so long as commercial paying wells are found. This clause found last in the lease under sound rules of construction would indicate from its position and deviation from the remainder of the lease, which is 'in the stereotype form, a special agreement and covenant for the completion of one well within sixteen months regardless of any qualifying conditions contained in the lease. ''Where a lessee under an oil and gas lease has not within a reasonable time entered upon the demised premises for the purposes of exploring for oil and gas, the law presumes an abandonment; and the lessor

may by a suit in equity cancel the lease as a cloud on his title." Archer's Oil & Gas Cases, § 28, p. 92; *Huggins* v. *Daley,* 99 Fed. 606; *Steelsmith* v. *Gartland, supra.*

In leases of 'this character time is the essence of the contract. *Thomas* v. *Standard Development Co.,* 70 Mont. 156. Because of the fugitive character and fluctuating value of the true subject matter thereof this is necessarily so. But, the defendant relies solely upon the proposition that the plaintiff's only remedy is a suit to recover delay money or for damages for violation of the lessee's covenant to drill. Here is a lease executed December 1, 1921. Two years later the lessee has neither drilled nor paid rentals—has in fact done nothing more than take the lease from the hands of the lessor and put it 'to record. This is the face that the consideration for the lease was that the lessee perform "the covenants and agreements" therein contained. Does not this constitute an abandonment? In the absence of extenuating and qualifying circumstances, which of course may be shown by the defendant on the final hearing, we would say that it does.

Applying the principles herein adopted to the case made by the bill and exhibit which is admitted to be true on demurrer, we are of opinion that the bill stated a cause of action on its face, and that the trial court erred in sustaining the demurrer thereto. The decree of the trial court is therefore reversed and the cause remanded, with directions to overrule said demurrer.

*Reversed and remanded.*